UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

JAYSON HATTON,

**Individually and on behalf
of all others similarly situated,**

    Plaintiffs,

    v.                                                     **Case No.** 14-1459

**CABLECOM, LLC,**

    Defendant.

## COLLECTIVE AND CLASS ACTION COMPLAINT

### INTRODUCTION

Plaintiff Jayson Hatton and members of the proposed classes, by their attorneys, for their complaint against Defendant Cablecom, LLC ("Cablecom") state as follows:

1. This is an collective and class action by Plaintiff Hatton, on behalf of himself and other splicers currently and formerly employed by Cablecom, to seek redress for Cablecom's violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 et seq., and Wisconsin wage payment laws; as well as an individual complaint by Plaintiff Hatton for Cablecom's violation of federal and Wisconsin anti-retaliation statutes, and its unlawful failure to pay bonus payments earned by Hatton by retroactively changing the formula used to calculate Hatton's bonus payment.

2. The claims arise from Cablecom's failure to pay to its splicers wages required by law, Cablecom's unlawful deductions from its splicers' wages in violation of Wisconsin law, as

1

well as Cablecom's retaliation against Hatton for attempting to enforce his right to unpaid wages under the FLSA and Wisconsin law.

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction under 29 USC §216(b) and 28 U.S.C. §1331 because the claims by Hatton and other members of the FLSA Class allege violations of the FLSA, 29 U.S.C. §201 et seq.

4. This Court has supplemental jurisdiction over the claims of Hatton and other members of the Rule 23 Class brought under Wisconsin law pursuant to 28 U.S.C. §1367 because they are based upon the same nucleus of operative facts, and therefore form the same case or controversy as their FLSA claims.

5. This Court has personal jurisdiction over Defendant Cablecom because it maintains its principal place of business in Milwaukee County, Wisconsin within this district. The acts giving rise to the claims alleged occurred in this state and the majority of the acts occurred in this district.

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) & (c) because a substantial part of the events giving rise to the claims described herein occurred in this district and Defendant may be found within this district.

## THE PARTIES

7. Defendant Cablecom is a corporation organized and existing under the laws of the State of Wisconsin. Defendant's principal place of business is at 3701 W. Burnham Street, Suite C in Milwaukee, Wisconsin.

8. Cablecom is an employer within the meaning of Wis. Stat. §109.03(1) and within the meaning of the FLSA, 29 U.S.C. §203.

9. Named Plaintiff Jayson Hatton is an adult resident of the State of Minnesota. Hatton performed work for Cablecom in Milwaukee, Wisconsin as a Splicer. Pursuant to the consent forms attached as Exhibit A to this complaint, Plaintiff Hatton has consented to participate in the Fair Labor Standards Act claims raised in this complaint.

## FACTUAL ALLEGATIONS

**A. COMMENCEMENT OF EMPLOYMENT**

10. On June 4, 2014, Cablecom extended an offer of employment for Hatton to become employed with Cablecom stating that Hatton's starting hourly rate would be $34 per hour.

11. On June 16, 2014, Cablecom required Hatton to sign a document entitled Splicer Compensation Plan Review (hereafter "Compensation Plan.") The Compensation Plan replaced hourly rate system of compensation outlined in Hatton's offer of employment with a system in which he was supposed to be paid a daily rate of $272 per day regardless of how many or how few hours he worked per day.

12. Upon information and belief, for at least the past three years, Cablecom has always extended offers of employment to its splicers stating that they would be paid on an hourly basis, but ultimately paid them on a day rate basis. The starting day rate always equaled eight times the hourly rate of pay promised by the splicers' offers of employment.

3

13. The Compensation Plan also stated that splicers, such as Hatton, would receive a bonus of $2 for each and every burn completed on days when he completed more than 25 burns. The Plan also stated that the bonus was payable on a quarterly basis.

14. The Compensation Plan also contained a section stating that if a splicer was required to return to a completed job due to errors or poor workmanship, he would suffer a deduction from his wages equal to the one eighth of his daily rate, multiplied by the number of hours required to complete the rework.

15. In addition to the day rates set forth in the Compensation Plan, splicers employed by Cablecom, including Hatton, would also occasionally receive on-call pay and other forms of hourly compensation.

**B. UNCOMPENSATED WORK OUTSIDE REGULAR WORK DAY.**

16. Splicers employed by Cablecom received work related emails on their cellular telephones every day of the week, including their scheduled days off.

17. Cablecom required its splicers to check and respond to work related emails as soon as they received them, regardless of whether the emails were received during work time, during off-duty time on a work day, or during a scheduled day off.

18. Cablecom also required its splicers to respond to periodic, work related telephone calls on their scheduled days off.

19. As required by Cablecom, splicers under its employ have spent time during non-scheduled work hours, both during the days when they are scheduled to work and days when they are scheduled to be off-work, to check and respond to work related emails and respond to work-related telephone calls.

4

20. Even though splicers have repeatedly informed Cablecom that they check and respond to work-related emails and telephone calls during their off-duty time and scheduled days off, Cablecom has never prohibited, nor taken any steps to prevent its employees from checking and responding to work-related emails and telephone calls during their off-duty time and scheduled days off.

21. Even though Cablecom required its splicers to check and respond to work-related emails and telephone calls during their scheduled days off, it has never paid the day rate to its splicers on their days off, when they were nonetheless required and suffered/permitted by Cablecom to check and respond to work related emails and telephone calls.

22. Cablecom has also never counted the time spent by the splicers checking and responding to work related emails and telephone calls during their off-duty time, which could often be 30 minutes or more of work time per day during both scheduled work days and scheduled days off, as hours worked in calculating the splicers' entitlement to compensation.

### C. AUTOMATIC LUNCH DEDUCTIONS

23. During each and every day when splicers performed any work aside from checking and responding to work related emails and telephone calls, Cablecom automatically deducted a half hour worked from their hours worked as a lunch period.

24. In fact, splicers do not take meal periods where they are completely relieved from duty while eating.

25. Cablecom was aware that splicers under its employ do not take a meal period, but continued to deduct a half hour from their hours worked even though it suffered/permitted them to work through their meal breaks. For example Cablecom informed Named Plaintiff Hatton,

5

through its supervisors, that the 30 minutes would be deducted for a meal, regardless of whether he worked through the break.

26. When calculating the splicers' compensation, Cablecom did not include all of the splicers' non-overtime compensation, such as their bonus compensation, in calculating the average non-overtime hourly rate earned by the splicers during the workweek.

**D.     RETROACTIVE MODIFICATION OF BONUS RATES (RETALIATION).**

27. After commencing employment at Cablecom, Hatton made repeated complaints about Cablecom's usage of a daily rate to both compensate him, and as the basis for calculating his overtime pay.

28. After Hatton complained, Cablecom implemented a new policy, applicable only to Hatton, under which Hatton is eligible for bonus compensation only if he averaged more than 18 burns per hour.

29. Cablecom applied its reduced bonus policy to Hatton retroactively so that for the time period before Cablecom announced the change of the policy to Hatton, Hatton did not receive any bonus payments if he completed more than 25 burns during the day, but 18 burns per hour or fewer.

**COLLECTIVE ACTION ALLEGATIONS**

30. Named Plaintiff Hatton brings his First Claim for Relief, pursuant to the Fair Labor Standards Act, on his own behalf and on behalf of all other similarly situated splicers employed by Cablecom ("FLSA Class"), pursuant to Section 16(b) of FLSA, 29 U.S.C. §216(b).

31. Named Plaintiff Hatton is similarly situated to others in the FLSA Class and are subject to Defendants' common practice, policy, or plan of (a) failing to count their time spent

checking and responding to work related emails as worktime; (b) automatically deducting a half hour meal break on each day when they worked through their meal breaks; and (c) failing to count all of their non-overtime compensation when calculating the average hourly wage rate they received during the workweek, which is then used to calculate their overtime pay.

32. The First Claim for Relief for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA, 29 U.S.C. §216(b), for prospective members of the FLSA Class that are similarly situated to Hatton and have claims that are similar to Hatton's First Claim for relief.

33. Following the filing of this Complaint, members of the FLSA Class may sign Consent to Sue forms, and agree to "opt in" as plaintiffs to this litigation.

34. The claims of Hatton are representative of the claims of members of the FLSA Class in that such employees are hourly employees, work for Defendant, and have been deprived of wages and overtime pay by the Defendant.

35. The names and addresses of the FLSA Class are available from Defendants, and notice should be provided to the FLSA Class via first class mail to their last known address as soon as possible.

## CLASS ALLEGATIONS

36. Named Plaintiff Hatton brings the Second Claim for Relief on his own behalf and on behalf of all Splicers employed by Cablecom who was not paid the legally required hourly rate for each and every hour of work that they performed for Cablecom, who was not paid the day rate for each and every day that they performed work for Cablecom, who had their earned wages deducted for alleged faulty workmanship in violation of Wis. Stat. §103.455, or for whom

7

Cablecom failed to count all hours worked and non-overtime pay received when calculating their entitlemetn to overtime pay, pursuant to Rule 23 (a) and (b) of the Federal Rules of Civil Procedure. ("Rule 23 Class)

37. The persons in the Rule 23 class identified above are so numerous that joinder of all members is impracticable. Upon information and belief, Cablecom has employed several dozen splicers over the past two years. Joinder is rendered even more impracticable by the fact that former splicers employed by Cablecom have relocated to other areas throughout the country.

38. There are questions of law and fact common to the Rule 23 Class that predominate over any questions solely affecting individual members of the class, including, but not limited to:

(a) Whether Cablecom can lawfully use a day rate system of compensation to compensate members of the Rule 23 Class, given that they received forms of pay other than the day rate, and were not paid the day rate for each and everyday that they performed work for Cablecom;

(b) Whether Cablecom is legally required to use the hourly rate of compensation promised to members of the Rule 23 Class on their offers of employment to compensate them for each and every hour worked;

(c) Whether Cablecom is required by law to pay the day rate to members of the Rule 23 Class on their days off, when they were required and/or suffered/permitted by Cablecom to check and respond to work related emails and telephone calls, even assuming arguendo the day rate system of compensation used by Cablecom was lawful;

(d). Whether Cablecom was legally required to count all non-overtime compensation members of the Rule 23 Class received, when calculating the average wage rate that they received during the workweek;

(e) The nature and amount of compensable work performed by members of the Rule 23 Class;

(f) The proper measure of damages sustained by members of the Rule 23 Class.

8

(g) Whether Cablecom deducted wages from members of the Rule 23 Class for faulty or defective workmanship, without first meeting the requirements of §103.455.

39. Hatton's claims are typical of those of the Rule 23 Class. Hatton, like other members of the Rule 23 Class, was subjected to Cablecom's illegal pay practices of failing to pay them the agreed upon hourly rate for each and every one of their hours worked, failing to pay the day rate for each and every day that they performed work for Cablecom, and failing to count all of their hours worked and non-overtime compensation received when calculating their entitlement to overtime pay.

40. Hatton will fairly and adequately protect the interests of the Rule 23 Class and has retained counsel experienced in complex wage and hour litigation.

41. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against a large corporate defendant, particularly those with relatively small claims.

42. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3), because questions of law and fact common to the Rule 23 Class predominate over any questions affecting only individual members of the Rule 23 Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

43. Defendants' common and uniform policies and practices denied members of the Rule 23 Class wages for work performed to which they are entitled. The damages suffered by the individual members of the Rule 23 Class are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will

9

obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's pay practices.

44. Hatton intends to send notice to all members of the Rule 23 Class to the extent permitted or required by Rule 23.

**FIRST CLAIM FOR RELIEF:**
**MINIMUM WAGE AND OVERTIME COMPENSATION IN VIOLATION OF THE FLSA**

45. Plaintiff Hatton and FLSA Class Plaintiffs re-allege and incorporates by reference the allegations contained in paragraphs 1-44 of the complaint.

46. Defendant is an employer within the meaning of 29 U.S.C. § 203(d).

47. Members of the FLSA Class are employees within the meaning of 29 U.S.C. § 203(e).

48. The FLSA requires each covered employer to compensate all nonexempt employees at a rate of not less than one and one-half times their regular rate of pay for work performed in excess of forty (40) hours per workweek.

49. The FLSA requires each covered employer to compensate all nonexempt employees at a rate not less than the federal minimum wage for all hours worked.

50. The FLSA requires each covered employer to compensate all nonexempt employees who are required to remain on call on the employer's premises or so close thereto that they cannot use the time effectively for their own purposes. 29 C.F.R. §785.17; *See also* 29 C.F.R. §785.14.

51. Upon information and belief, during the applicable statute of limitations, members of the FLSA Class had weeks worked during which they did not receive the minimum wage

10

required by federal law once all of their hours worked, including work performed during unpaid meal periods, responding to work related emails and phone calls, and performing work to repairing errors or poor workmanship, are taken into account.

52. During the applicable statute of limitations, members of the FLSA Class did not receive the correct amount of overtime pay required by the FLSA from Cablecom because Cablecom failed to count all of their hours worked, and failed to include all of their non-overtime compensation in calculating their average wage rate, which is then used to calculate their entitlement to overtime pay.

53. In addition to unpaid wages required by the FLSA, members of the FLSA Class are entitled to 100% as liquidated damages, plus his attorneys fees and costs of bringing the claims.

**SECOND CLAIM FOR RELIEF:**
**FAILURE TO PAY OVERTIME AND MINIMUM WAGE**
**COMPENSATION IN VIOLATION OF WISCONSIN LAW**

54. Hatton and Rule 23 class Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1- 53 of the complaint.

55. At all relevant times, Cablecom has been, and continues to be, an "employer" within the meaning of Wis. Stat. §104.01(3) and §109.01(2).

56. At all relevant times, Hatton along with other members of the Rule 23 Class were employees within the meaning of Wis. Stat. §104.01(2) and §109.01(1r).

57. Wis. Stat. §104.02 requires an employer to pay to its employees at least the minimum wage for each and every one of their hours worked.

11

58. Wisconsin Administrative Code § DWD 274.03 require an employer to pay overtime compensation, calculated as one half of their regular hourly rate of pay, to all non-exempt employees.

59. Wis. Stat. §109.03(1) and (5) requires the employer to each of his employees the full amount of agreed upon and/or promised pay each pay period, including all pay required by legally required compensation agreements, as well as all wages required by Wisconsin law including the Wisconsin administrative code.

60. Wis. Stat. §103.455 prohibits employers from making deductions from wages earned or due to employees, because of their alleged defective or faulty workmanship, when they had not authorized in writing the deduction, no representative of theirs had agreed that their negligence, carelessness, or malicious conduct had caused the defective work, and no court had found that they were liable for causing the defective work.

61. Upon information and belief, during the applicable statute of limitations, members of the Rule 23 Class had weeks worked during which they did not receive the minimum wage required by Wisconsin law once all of their hours worked, including work performed during unpaid meal periods, responding to work related emails and phone calls, and performing work to repairing errors or poor workmanship, are taken into account.

62. Cablecom cannot use a daily rate system of compensation to compensate members of the Rule 23 Class when the daily rate is not the only form of compensation that the they received from Cablecom, and when Cablecom failed to pay them the daily rate for each and every day during which they were required or suffered/permitted to perform work for Cablecom.

12

63. Cablecom failed to pay to members of the Rule 23 Class the full amount of wages required by its agreement/understanding with them, once the agreement to pay the them using an unlawful daily rate system of compensation is disregarded, as required by Wis. Stat. §109.03(5).

64. Even if the daily rate system of compensation is lawful, Cablecom violated the agreement that they reached with members of the Rule 23 Class by failing to pay to them the day rate for each and every day during which they were required or suffered/permitted to perform work for Cablecom.

65. Additionally, Cablecom failed to count all of the hours worked by members of the Rule 23 Class, including time spent during meal periods when Cablecom failed to provide them with at least 30 minutes free from work, spent responding to work related emails and phone calls, and spent performing work to repairing errors or poor workmanship, when calculating the amount of overtime pay that members of the Rul3 23 Class are entitled to receive.

66. Cablecom also failed to take into account all non-overtime compensation that members of the Rule 23 Class received during the workweek, such as but not limited to burn bonus pay, when calculating the average hourly rate used to calculate their rate of overtime pay.

67. Cablecom additionally violated Wis. Stat. §103.455 by making deductions from wages earned or due to members of the Rule 23 Class because of their alleged defective or faulty workmanship, when they had not authorized in writing the deduction, no representative of theirs had agreed that their negligence, carelessness, or malicious conduct had caused the defective work, and no court had found that they were liable for causing the defective work.

68. In addition to violating right of members of the Rule 23 Class to receive all wages required by Wisconsin law, Cablecom also violated Named Plaintiff Hatton's rights by

13

retroactively changing the formula that it used to calculate Hatton's burn bonus income after he performed such work, which resulted in a reduction of Hatton's bonus income. Since Hatton's burn bonuses are wages within the meaning of Wis. Stat. §109.01(3), Cablecom violated Wis. Stat. §109.03(1) and (5) by failing to pay to Hatton burn bonuss that were earned, prior to its announcement of the change in the formula it used to calculate Hatton's bonus income.

69. For all wage deductions that Cablecom made from the wages of members of the Rule 23 Class in violation of §103.455, they are entitled to twice the amount of deducted wages.

70. For all other wages that Cablecom was required by Wisconsin law to pay, but failed to pay as outlined in this count of the Complaint, members of the Rule 23 Class are entitled to, in addition to actual unpaid wages, 50% of the unpaid wages as increased damages under Wis. Stat. §109.11(2), plus their attorneys fees and costs pursuant to Wis. Stat. §109.03(6).

### THIRD CLAIM FOR RELIEF:
### RETALIATION AGAINST HATTON UNDER THE FLSA AND WISCONSIN LAW

71. Plaintiff Hatton re-alleges, and incorporates by reference paragraphs 1-70 of the complaint.

72. By complaining to Cablecom about its system of using a day rate, rather than hourly rates to compensate him, Hatton filed an internal oral-complaint against Cablecom's use of a daily rate to calculate his overtime pay in violation of the FLSA.

73. By complaining to Cablecom about its system of using a day rate, rather than hourly rates to compensate him, Hatton also attempted to enforce his rights under Wis. Stat. §109.03.

74. Cablecom is prohibited by 29 U.S.C. §215 to retaliate against Hatton for his filing of a complaint to assert his rights under the FLSA.

75. Cablecom is similarly prohibited by Wis. Stat. §111.322 from retaliating against Hatton for his attempt to enforce his rights under Wis. Stat. §109.03.

76. In retaliation against Hatton's complaint about his wages, Cablecom singled Hatton out by changing only his bonus compensation eligibility, which had the effect of substantially decreasing Hatton's bonus compensation income. The change in bonus compensation discriminated against Hatton for his assertion of rights under the FLSA and Wis. Stat. §109.03, in violation of both 29 U.S.C. §215 and Wis. Stat. §111.322.

WHEREFORE, Hatton, members of the FLSA Class, and members of the Rule 23 Class respectfully request the Court to grant them the following relief:

1. All additional wages that FLSA Class Plaintiffs, Rule 23 Class Plaintiffs, and Hatton are entitled to receive pursuant to the Fair Labor Standards Act and Wisconsin Law;

2. All additional wages that Hatton is entitled to receive pursuant to the anti-retaliation provisions of the Fair Labor Standards Act, and Wisconsin law for his individual claims against Cablecom;

3. 100% liquidated damages for all FLSA damages;

4. 100% penalty wages for all of Hatton's damages under Wis. Stat. §103.455;

5. 50% of all other Wisconsin law damages, which are not duplicated by FLSA damages, as increased damages under Wisconsin law;

6. Their actual attorneys' fees and costs of prosecuting this action.

Dated this 19th day of November, 2014.

s/Yingtao Ho
                                            Nathan D. Eisenberg (State Bar No. 1030555)
                                            Yingtao Ho (State Bar No. 1045418)
                                            THE PREVIANT LAW FIRM, S.C.
                                            1555 North RiverCenter Drive, Suite 202
                                            Milwaukee, WI 53212
                                            (414) 271-4500

                                            ATTORNEYS FOR PLAINTIFF

16